Council for Appellant, if you'd make your appearance and proceed, please. Anne Talaferro for Ms. Woodmore. Thank you. May it please the Court and Council. I know that as appellate attorneys and as appellate judges, we have blinders on most of the time. And we look at the law, and we look at transcripts, and we look at standards, and we look at the cold hard record of cases. So usually, the emotional impact of a case or the human impact of a case is kind of lost in the appellate court. And that's just the way it is. But every once in a while, a case comes along that just hits you. And this one hit me. And it was a gut punch to me that respectfully, a defense attorney would do what happened here. And that, again, respectfully, a judge would allow what happened here. And that the government would justify what happened here. And I obviously wish no harm to any of the members of this court. But I hope this case was a little bit of a gut punch to the court, too. And I ask that this court give Ms. Woodmore some relief. Appellant has presented the court with a number of interrelated reasons that are seen from the record. As to why the court should find Amber Woodmore's plea was not knowingly and voluntarily entered. And then as such, why the court should not enforce the appellate waiver that was signed in this case. Well, you talk about the appellate waiver, Ms. Talfaro, and that raises a question for me. I don't understand how the plain error standard does any work in the analysis. I mean, the initial threshold question is, do you have a right to appeal at all? And under Hahn and its progeny, that's reviewed under de novo review. So, I mean, why are we talking about a plain error standard and applying that standard alternatively? And I think the issue is that part of the Hahn standard looks at whether the plea was knowingly and voluntarily entered. And then it also looks at whether there was enforcing the waiver will not result in a miscarriage of justice. Part of that analysis, the court is absolutely right. My issues on appeal that I wanted the court to look at on appeal include the knowing and involuntariness of the appeal. So, I guess I just raised that issue because it wasn't objected to below. And I understand that it's combined. Well, it is, but you did that as a, I'm sorry, I didn't mean to interrupt. I mean, you did it as a freestanding issue. And I mean, really, for you accept the fact, right, for our purposes right now, that at the threshold, it isn't a freestanding issue. OK, OK. And yeah, absolutely. And and I also accept the. Well, yes, absolutely. Let me jump to the miscarriage of justice. When we look at the ineffective assistance as it relates to that, for purposes upon, we're looking at ineffectiveness as it relates to the negotiation of the waiver itself, not general ineffectiveness. Correct. And in what evidence did you marshal or argument in your brief? I wasn't clear that there was any that related to specifically the question of the negotiation of the waiver. Well, and I believe that the case law also I understand that there's ineffective assistance with regard to the negotiation of the waiver. In this case, though, I believe it's a little bit broader because of the waiver. If the negotiation of the plea itself is bad and involuntary, the negotiation of the waiver is therefore inherently subsumed by that. I believe that in any event, with regard to the negotiation of the waiver of the the appellate rights, this plea agreement basically was negotiated. And this one more wage, everything wage or appellate rights, which are collateral rights, which are right to make any sentencing recommendations. And in negotiating this plea and the waiver of basically all of her rights, we have argued that trial counsel was ineffective because he basically wasn't prepared for trial, was laser focused on having her enter a plea, was laser focused in doing a plea and ended up negotiating a plea for which there was no benefit to Ms. Woodmore. She got under contract law, which applies in the context of negotiating a plea agreement. As we all know, back in law school, it doesn't take much to be consideration. And in this context, you got a reduction for acceptance of responsibility. You got dismissed charges. I'm not going to inquire as to whether that's adequate consideration, but that's consideration. I mean, she got a benefit. And I would effectively disagree that the reduction of charges. Well, she entered an 11C1C binding plea. And so any consideration for the points off for acceptance of responsibility, the government itself said that's kind of moot. That doesn't really kind of matter because because she entered an 11C1C to at least 151 months. Well, with all due respect to the government, if it said that, the Supreme Court says it's not moot. The guidelines calculation matters and it matters in determining what, where, if anything, where within the range that she stipulated to, she would be sentenced. And so so those things like acceptance of responsibility and the dismissed charges. I mean, that's not that's consideration, is it not? Well, in a normal case, I think if it wasn't an 11C1C plea. Well, she got the 11C1C3 by agreeing. But, you know, one one thing that she got out of that was this dismissal of the charges. Right. Even if those charges were dismissed, even if she walked in and entered a plea with nothing, with no plea agreement at all, she may have had the exact same sentencing guideline. Stop there, because when you say that she got nothing and you say she might have gotten the same guideline. We know for a fact that her guideline sentence, had she been convicted, would have been base 34, three for roll, two for the money laundering. She loses her three for acceptance of responsibility. Suddenly her low end becomes 262 months. And so 100 plus months more. You can't say she got nothing out of this. She got nothing out of it if she would have beaten the charge because relevant conduct is going to eat her up. Plus, it's a B1A charge. Absolutely. But the court also needs to understand that there was a minimum mandatory of 10 years. Right. And if and she also weighed, and I think this is an important fact, she also weighed any ability to make any motion for a sentencing reduction or a variance or anything like that. So even if, as the court says, her guideline level because of these issues would have been 262 months, she still could have argued for a variance. But picture this. She goes to trial. She gets the 262 low end and she comes in and she says, Judge, please, here are my circumstances. And she has some. Here are my circumstances. Please vary. It would take a major variance to get all the way down to 151 months. So did she lose something? I'm not saying her counsel did a great job. I'm saying he unwittingly may have taken her to a good resting spot. And I worry a little bit whether she understands. You mentioned gut punch one. There's also a gut punch two, which is if she fails, she goes back to district court. She insists on going to trial. And suddenly there she is 262 months. Does she understand that? Well, I don't know. I mean, I don't think she understands that. I don't also think she understands that. I mean, I understand that if you go to trial and you lose, you are going to get all of these enhancements. But she got all these enhancements, quite frankly, anyway. And if you look at what the provable conduct was, what she pled to, what the government indicated that she did, we are looking at, yes, a conspiracy to distribute drugs, but we're also looking at one $800 transaction. And I understand that. But for that, I think that she would have an argument that that's 262 months. That 151 months that she pled to is not a reasonable sentence for an $800 transaction. And the fact that she was led into a binding plea of at least 151 months when other people in this conspiracy, and I absolutely understand that these other people pled guilty. They had plea agreements. They might have had cooperation agreements. But the people who were on the same level of culpability at her, 51 months, 27 months. The main source of supply for this conspiracy, I believe, got 50-something months. She, for one $800 transaction, was led into a binding plea for 151 months. She wasn't prosecuted for one $800 transaction. She was deemed to be a manager slash supervisor in a meth conspiracy. The fact that they chose one overt act to make the focus of the indictment doesn't mean that's the nature of the charge, right? She was deemed to be, but the government has never put to its burden to do that. And the information they talk about, one $800. Well, she pled to the conspiracy, right? Absolutely. No, I'm sorry. When she pled to the conspiracy, the government's in the provable conduct as part of the plea. They talk about that single $800 transaction. Why would they need to do more? They wouldn't. But what I'm saying is that in a sentencing, if you're going to have enhancements, if you're going to have those other things to add to, then the government has to prove their enhancement. But because of the ineffective assistance of counsel and the lack of advocacy in this case, and because of the plea agreement, which bound them to say, no, we can't argue anything as sentencing, basically, the government was never put to its burden. And another point about the manager. Let me, didn't the PSR have information in it about her management and supervisory activities, particularly after her brother went to prison? The PSR describes phone calls, and the PSR says that the government says that she then took over, took over the management for a little while. But then another co-defendant took over after her. I don't care if somebody took over after her. There was evidence, there was information provided that for a period of time, she stepped in and was running this conspiracy. That was the allegation, and respectfully? The attorney, the defense attorney, is the one that made the argument for the government. The government never had to put on actually a sentencing to show that she actually qualified for that manager and leader role. But the point is, there were no objections to the facts of the PSR. Absolutely. Okay, let me focus on this ineffective assistance for a second. We talked about the fact that the ineffective assistance that is at play in the threshold issue relates to the negotiation of the waiver. There is a lot of discussion in your brief about other forms of ineffective assistance. Well, you cite to Reed. I have a hard time seeing how this case is in any way like Reed. I mean, there you had both parties under oath testifying, and very importantly, the court made a specific finding regarding ineffective assistance of counsel. The motion to dismiss, what the court did in connection with that, there was no specific finding, and counsel, defense counsel, wasn't under oath. So, why do you think that any of your ineffective assistance arguments are right to be addressed now, and particularly the ones that don't even relate to the negotiation of the waiver? And the reason I put the additional ineffective assistance of counsel claims in the brief is because during the plea polyphy, the judge said you have the right to appeal ineffective assistance of counsel claims. And that was one of the issues why we said that the waiver shouldn't be. So, I put in ineffective assistance of counsel claims that I believe the court could consider on appeal because the court misstated the scope of the waiver. But it was stated correctly in the written plea agreement she signed, right? And she signed that before the district court said anything. 20 days before. Right. And in fact, she can raise IAC claims. She just can't. She has to do it collaterally. Correct. But. Counsel, on the IAC claim, the only one that's available when you plead guilty is involuntary plea. And I don't, isn't it necessary for her to, for you to tell us, because her position is I would never have pleaded guilty had I known. But isn't it a necessary fact for you to show us that she understands that if she's convicted, her advisory guideline range would be 262 months. She has to understand that before she can say whether she would have pleaded guilty. And as I understand what you told me earlier, she doesn't even know that today. Well, I mean, according to the plea polyphy, they advised her that it was a potential license. So I think, no, no, I understand that. I have not advised her. This is off the record. I have not advised her of this 262 months. Is that ineffective? Well, it may be. I mean, it may be. Well, if it went back and everything played out and she had a trial and she got the low end, let's assume she got the benefit and got the low end 262 months. And she said, what in the world just happened to me? I'm doing 110 plus months. What would you say to her? You're welcome. No, what I'm asking the court to do is to find that she was not properly advised for the entry of this plea. She told the court that she believed she was going into a plea deal that she did not understand. So if the court will remand this case and allow her to have advice of other counsel. Is she guaranteed the same plea offer if it's remanded back? Or can the government say, okay, fine, we'll just try you? I don't think she is. But if she wanted to go to trial, well, my position is this was no plea offer. She waived everything that she could anyway. Anything of benefit to her, she waived. And I understand that the court may not agree with that. But if the court remands and she goes back, then I believe that she needs to be advised. I don't know. I mean, the government may or may not have to give the same plea offer. But the point is, is that she told the court she believed she was misled into an offer she didn't understand. What do we do with the finding of the district court that she was not credible? That she thought she was getting no more than five years? I mean, we do have a written plea agreement that advises her of the possible range. And the district court went over it during the plea colloquy. And then her own counsel said, I never told her. The district court also said that nothing was missed in this plea colloquy. And there were a lot of things that were missed in this plea colloquy. And counsel also said that he definitely advised her that her minimum mandatory was 120 months. And that's under the plea, that's not what her minimum mandatory was. She was agreeing to 151 months. And without knowing that she would, by entering into this plea, she was absolutely going to go to prison for at least 151 months. Then I don't believe that she was properly advised to enter a knowing involuntary plea by not knowing that direct consequence of her plea. Ms. Talaparo, you're significantly over time. I apologize. No, thank you. Good morning, Your Honors. Counsel, may it please the court, I'm James Braun on behalf of the United States. If I could start by addressing Judge Holmes's question as to the appropriate standard of review. Under Hahn, it is the defendant's burden to establish that the waiver of appeal rights doesn't apply here. And under Rawlings, if the defendant did not challenge the voluntariness of the plea below, it is reviewed for plain error. Even though normally that would be a de novo review, it is reviewed for plain error. So that's where plain error comes into effect here. We would argue that the defendant did not challenge the voluntariness of the plea before the district court. I think that the argument is that the district court, whether they challenged it directly or not, that the district court passed on it. Because the district court made a finding specifically that it was knowing and voluntary. It did, but in the context of not allowing the defendant to dismiss her counsel and get a new counsel. And that was a different inquiry. That was simply whether the communications had broken down between the two. And so the court didn't necessarily have to consider all of the other things that might come into play in deciding on these facts, on the arguments that are made on appeal, whether the plea was knowing or voluntary. But in deciding the motion to whether counsel could be dismissed, the court did in fact look into and make a ruling on knowing and voluntary. It did, yes. And as to the knowing and voluntary nature of the plea, that's the primary issue here. What's her plea, knowing and voluntary, whether the court's looking at it in the context of enforcing the appellate waiver or ruling on the defendant's request that the court dedicate her guilty. Why are you fighting it? The government screwed up, right? This is not a standard 11C1C plea agreement or advisement. This is not a standard 11C1C plea agreement as far as the form that was used. But it didn't adequately advise her. It's mixed up as though it weren't 11C1C. There's language in this about the court can vary and so forth and so on that didn't belong in the plea agreement, right? There's some conflicting language in there, but it was clarified. Don't say conflicting. There's some language in this plea agreement that is non-rule 11C1C language, right? That is correct. And so mistakes happen, but when mistakes happen, acknowledge there's a mistake. There's a mistake here, right? That is a mistake, yes. And so that's something that could have confused a defendant and not a well-educated defendant. Is that right? Certainly. And so why are you fighting this? I don't understand. Even if you can and even if you can barely win on something, if you're responsible for the misunderstanding that's in this plea agreement and the advisements that were given, why are we here? Because ultimately this court has to decide if the defendant entered a knowing involuntary guilty plea. And even where there are some misadvisements along the way, this court looks at the totality of the circumstances. Any case is going to have mistakes in it. What matters is at the end of the day, does she understand what she's doing? Does she understand the nature of the charges and the potential penalties? And here she clearly did because even though the only mistake in the plea agreement is that it advised her that she could withdraw her plea. But that's clarified in other ways. It's clarified in the written statement of intent to enter a guilty plea that says the defendant will be allowed to withdraw her plea. And at the change of plea hearing, the district court clearly stated, if I don't accept your plea, I'll allow you to withdraw it. And that's not really what goes to the heart of what the defendants are arguing here anyway. If she's not arguing that she didn't understand she could withdraw her plea, that would have made her more likely to enter the guilty plea. What about the misinformation about whether she could bring an ineffective assistance of counsel claim? And that was just in regard to whether she could appeal. The plea agreement had a waiver of appellate rights that said you can't appeal, but you can file a 2255 on the issue of ineffective assistance. And that got jumbled up at the change of plea hearing. So the court advised her you can bring an IAC claim. You can appeal it. On appeal. On appeal. And that's incorrect. That's right. And what this court's cases say is if you construe that then in the defendant's favor, that would allow her to appeal that one issue. And that would go to just the enforcement of the appellate waiver. But even then, even if the court allows her to bring that claim on appeal, that doesn't necessarily go to the knowing and voluntary nature of her guilty plea overall. And she would still run into the Galloway Rule, which is exemplified by this case, that ineffective assistance counsel claims made for the first time on appeal are presumptively dismissible. And the reason for that is there's simply not a sufficient record of what Mr. McGuire advised the defendant below, why he advised her of it, all of the contents of the memos that he referenced at the hearing on the motion to dismiss counsel. There are a lot of unanswered questions in that regard that make this case more appropriate for a 2255. And again, as far as why the government is fighting, the defendant will have a bite at the apple in a 2255. There was ineffective assistance counsel, and she can establish that he didn't adequately advise her of the rights. But on this record, the mistake that was made in the plea agreement does not rise to the level of finding that her guilty plea was not a knowing and voluntary. The plea agreement clearly stated in bold letters that it was pursuant to 11C1C. In a separate paragraph, it said, pursuant to 11C1C, the parties agreed that the range of 151 to 188 months is the appropriate disposition of this case. The court reiterated that at the change of plea hearing and affirmed that the defendant understood that. Learned Hand probably could have figured that out. I agree with you. But 11C1C to a woman with allegedly a fourth grade education ability and the conflicting messages. You can point to this paragraph and see this sentence that that shows it, but she can point to other provisions of this that leave it up in the air. Well, wait, I thought the judge could go differently. If I can clarify a couple points. One is the fourth grade education. I think she had a high school graduate. She's a high school graduate with a fourth grade reading level. That doesn't mean she had a fourth grade comprehension level. She had trouble reading. It doesn't mean she had trouble comprehending. As far as any inconsistencies in the plea agreement, I don't think there's anything in the plea agreement that says that the court can go lower. The recommended range is 151 to 188. The plea agreement itself contains a waiver of departure and variance. And it specifically says the defendant cannot ask for anything lower. The defendant cannot ask for a wait for a variance or departure. That should be pretty clear that this agreed upon sentence is the sentence you're going to get. And the court at the change of plea hearing discussed the guidelines and how the court can vary. But that was all in the context of if I reject your plea and you don't withdraw it, the court can sentence you to something else. And the court will then consider the guideline. Consider the guideline range. All of that discussion is in the context of the court having advice or if I don't accept your plea and you don't withdraw. So we should get used to a steady diet of this because there's no consequence. Well, again, the defendant will be allowed to file a 2255 if the court affirms here or enforces the appellate waiver. I also think that ultimately the question is, is this an involuntary plea? And we believe that on this record it is. And again, with regard to the ineffective assistance of counsel claim, we would argue that the Galloway rule should be applied here and that it should be presumptively dismissed so that it can be raised in a 2255. As far as consideration, I think the court has gone over that with the opposing counsel. The defendant did receive a substantial benefit for this plea agreement. The dismissal of the money laundering counts did result in lowering her guideline range. And on top of that, it prohibited the government from asking for an upward variance and the court from imposing one if it accepted the 11C1C agreement. And finally, as to the $800 transaction, the subject of the overt act and the factual basis. The factual basis doesn't limit the government's proof. That was simply, in fact, Section 846 doesn't require upward acts. So the statutory penalty was up to life in prison, and the government was allowed to put on proof of the defendant's sentencing liability. And that was actually incorporated into the 11C1C agreement. The range, 151 to 188, was based on the amount of drugs involved in this case. And there was testimony all the way back at the beginning of the case. The task force officer testified at the detention hearing that the defendant was reported on approximately 200 jail calls with her brother after he went to jail and she took over the organization. So it was very clear from the very beginning of the case that this was about much more than an $800 wire transfer. Let me ask you, just to be sure I understand your position on it. As it relates to the findings of the district court in connection with the motion to dismiss, what sort of deference, if any, do we give to those findings? I mean, do we treat them as subject to clear error review? And specifically, like the finding that her statements weren't credible, et cetera. Just to understand, what's your position on what we do with those findings? So we would submit that the factual finding of credibility is a finding that's subject to clear error review. The ultimate legal finding of knowing involuntariness, that is a de novo review, subject, of course, to the plain error standard because it wasn't challenged in the motion to withdraw the guilty plea below. And I understand Judge McHugh's point that the judge did ultimately find knowing involuntary. I do think that that was in a different context. Do you think the standard of review makes a difference here on the outcome? We don't. We submit that under any standard of review, the defendant was knowing involuntary on this record. And we would ask that the court, unless the court has any additional questions, I would yield the remainder of my time. Thank you. Thank you, counsel. Just for completeness, if you want one minute, Ms. Talaferro, you have it. I just want to point the court to one record or two record citations in the plea agreement. The plea agreement specifically states under the heading, the court, the IRS, and others are not bound. It says the defendant understands that the court is not a party and is not bound by this agreement nor any recommendation made by parties. The plea agreement, and that is at volume one, document 363 at 219. The plea agreement also states Amber Woodmore, the defendant, will not, quote, be permitted to withdraw any plea should the court decline to follow any recommendations by any of the parties to this agreement. Same volume, page 222. Those statements affirmatively misinformed her that the court was not bound by the recommendation. The 11C1C 151 to 188 months was deemed a recommendation of the parties and is directly contrary to what an 11C1C plea is. I ask the court to reverse this. Thank you. Thank you, counsel, for your arguments. Case is submitted.